UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | Case No. 07 CR 238 |
| JOHN W. ERICKSON, | |
| Defendant. | |

## INFORMATION

### COUNT ONE: Conspiracy

**The United States Attorney Charges:**

1. Between prior to January 2002, and continuing through at least on or about March 26, 2007, in the State and Eastern District of Wisconsin, and elsewhere,

**John W. Erickson**

did knowingly conspire with persons known and unknown to knowingly and willfully make illegal campaign contributions, including excessive campaign contributions; contributions using corporate funds; and contributions in the name of another. The illegal contributions to federal candidates aggregated $2,000 or more in a calendar year, in violation of Title 2, United States Code, Sections 441a, 441b, 441f and 437g(d)(1)(A)(ii).

2. At all times relevant to this information, the Federal Election Commission (FEC) was an agency of the United States government responsible for enforcing the limitations, prohibitions, and disclosure requirements of the Federal Election Campaign Act (FECA) set forth in Title 2, United States Code, Sections 431 through 435. Similar restrictions on campaign contributions existed under the laws of the State of Wisconsin.

3. Also at all times relevant to this information, Erickson was an employee of JHT Holdings, Inc. and affiliated companies, including ATC Leasing.

## Object of the Conspiracy

4. The object of the conspiracy was to evade campaign contribution prohibitions under both federal and state law; to make illegal contributions to federal and state elected officials aligned with the business interests of the conspirators; to illegally reimburse the contributions of co-conspirators and their family members; and to conceal such illegal activity from the FEC, the State of Wisconsin, and the public.

5. During the conspiracy, the amount of illegal campaign contributions exceeded $250,000.

## Manner and Means

6. As part of the conspiracy, members of the conspiracy, including Dennis M. Troha, identified public officials who supported Indian gaming and/or the relaxing of restrictions on interstate trucking. Members of the conspiracy

2

then sought to provide campaign contributions to these officials in excess of individual limits and in violation of other restrictions and prohibitions under federal and state law.

7. As one part of the conspiracy, conspirators provided purported loans to family members as a means of providing funds for contributions. Repayment of the purported loans, however, was not required until 2007, when agents of the Federal Bureau of Investigation questioned members of the conspiracy about their contributions.

8. As another part of the conspiracy, conspirators provided family members and others with direct cash reimbursements for campaign contributions.

9. As a further part of the conspiracy, conspirators utilized a large sum of cash, a significant portion of which was derived from corporate funds, to reimburse themselves and others for campaign contributions.

10. The conspirators directed contributions to the campaigns of more than 20 candidates, including but not limited to the following:

| | |
|---|---|
| - President of the United States | $18,000 |
| - U.S. Representative (multiple candidates) | more than $100,000 |
| - Wisconsin governor | more than $100,000 |

11. The conspirators also made similar illegal contributions to political action committees aligned with both Democratic and Republican political parties.

12. As a result, the conspirators caused the federal recipients of the contributions, and their agents, to file false and erroneous reports with the FEC.

3

### Role of John W. Erickson in the Conspiracy

13. As a part of the conspiracy, Erickson made individual campaign contributions knowing that the contributions had been or were to be reimbursed through prohibited sources.

14. As a further part of the conspiracy, Erickson facilitated the reimbursement of campaign contributions to himself and others by cashing checks payable to cash, by falsifying corporate expenses, and by diverting corporate income to a cash fund.

15. One such diversion of corporate funds involved a corporate check, dated September 25, 2003, payable to Erickson's employer in the amount of $86,954.06. Erickson endorsed the check to a third party. Over a period of the next 12 months, the third party wrote checks and/or gave cash to Erickson personally. Erickson then used the money to reimburse himself and others for campaign contributions.

16. As a further part of the conspiracy, Erickson controlled and disbursed money from a cash fund that was used, at least in part, to reimburse campaign contributions of the conspiracy.

### Acts in Furtherance

17. As an act in furtherance of the conspiracy, on or about May 28, 2002, in the State and Eastern District of Wisconsin, Erickson deposited $1,000

4

to his personal account and then wrote a $1,000 check to a third party to reimburse a $1,000 contribution to the campaign of Paul Ryan for U.S. Congress.

18. As an act in furtherance of the conspiracy, on or about December 12, 2003, in the State and Eastern District of Wisconsin, Erickson received $4,000 in corporate funds and then wrote a $4,000 check to cash. The cash subsequently was used, at least in part, to reimburse campaign contributions.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO: Corporate Contributions

### The United States Attorney Further Charges:

1. On or about May 28, 2003, in the State and Eastern District of Wisconsin,

### John W. Erickson

did knowingly and willfully make and assist others in making prohibited corporate contributions to a federal candidate aggregating $2,000 or more in calendar year 2003, in violation of the Federal Election Campaign Act.

2. The contributions, to the campaign of U.S. Representative Paul Ryan, were made knowing that money would be reimbursed by a cash fund that included corporate funds.

All in violation of Title 2, United States Code, Sections 441b and 437g(d)(1)(A)(ii) and Title 18, United States Code, Section 2.

September 4, 2007
Date

STEVEN M. BISKUPIC
United States Attorney